All right. The next case before the court is In Re Hickey, case number 141682. And do I understand that you want to reserve only two minutes for rebuttal? That's correct, Your Honor. Okay. You may proceed. Good morning, and may it please the court, the case proceeds from a decision of the board in a reissue proceeding denying all of the claims. I'm going to address three errors in the board's decision. First, the board erred in failing to consider each of the references and the claims as a whole. Second, the board further erred by ignoring evidence that there was no reasonable expectation of success. At best here, the board presented an unsupported case of obviousness to experiment based on a general and isolated teaching of the Vanderwood reference. And third, the PTO's arguments regarding emulsification and optimization reflect legal error and lack substantial evidentiary support. All right. Let me get something out of the way in the beginning, or a couple things quickly. You agree that MANG discloses all of the limitations of Claim 1, but uses the CFC blowing ease, right? Correct. Yes, Your Honor. Okay. So that's the thing that we're missing in MANG? Yes. All right. Then the second point is, I think that it's true that you argue that government can't find, or PTO can't find a motivation to combine if the motivation isn't the same as the patentee's motivation in making his invention. But our case law is pretty clear that as long as there's a motivation, it doesn't have to tie necessarily to the patentee's motivation, right? Yes. We agree with that, Your Honor. Okay. All right. Go ahead. Okay. Your Honor, turning to the first point, I submit this case exemplifies the danger of an oversimplified assessment of obviousness by taking an isolated and generalized teaching of a prior reference. And here we have the PTO has reiterated its position that it can do just that, that it can isolate pentane from magnus. And it's repeated its position, and we quoted it back in the introduction of our reply brief, because I think it's glaring. But this is precisely what the PTO cannot do, and this Court has said time and time again that it's impermissible within the framework of Section 103 to pick and choose only so much of a portion of a reference that supports one's position to the exclusion of the remainder of the reference that other parts necessary to obtain a full appreciation of what the reference fairly suggests. Okay. So you wouldn't disagree that there are at least, whether it's from Vanderwood or elsewhere, that the notion of replacing CFCs with something that's more environmentally friendly is something that was out there. We don't disagree with that, Your Honor. Okay. So the point is, how is pentane going to ever work in magnus, right? Would there be a reasonable expectation of success in achieving the claimed invention? Correct. So on your argument about a multiplication, you say that Vanderwood is different because it refers to polyether rather than polyester polyols. I'm having a hard time understanding why that distinction matters. Okay. Well, first of all, the claim is directed to a polyester polyol, a specific system with specific limitations and specific ratios for which the claimed composition obtains significant benefits for making rigid foam at a given density and in a desired range. And it will also allow you to use an appropriate amount of hydrocarbon blowing agent. So there's a single sentence in Vanderwood. It's not a generalized teaching. In fact, it's essentially a statement of a problem with the prior art. And it's directed to polyether polyols, not the claimed invention of polyester polyols. So you can't generalize anything from that. You can't generalize that. Explain to me what one of skill in the art would understand that distinction to mean. I mean, they're both polyols. That's the government's only response, really, is that, well, they're both polyols. But what is the difference from a standpoint of what a chemist, one skilled in the art, would understand at the time between use of a polyester and use of a polyether? I think all I can point to is in the record is that there are two different systems and that it was recognized that you could emulsify pentane to some degree in a polyether polyol system. But there's no statement in Vanderwood that you could emulsify pentane in a polyester polyol system. And I'd like to direct you to a particular page one point in Vanderwood at JA 288. And if you read this, the opening portion of Vanderwood, it comments on, not express the emulsification, but it says that there are solubility. I'll give you a moment if necessary. Yeah, 288. 288. All right. And in the opening middle of that left column, it says that there are solubility and compatibility issues with using pentane blowing agents with existing polyols. And therefore, new formulas had to be developed, quote unquote. So there's not only solubility problems, but there are compatibility problems. So even setting solubility aside, there are compatibility problems. That means there are phase separation problems. With even emulsification, it's going to have a phase separation problem. And Vanderwood is teaching at a larger point that pentane cannot be used in existing polyols without phase separation problems. And there's no teaching in Vanderwood, and the PTO doesn't point to any evidence, that you could build an emulsification to the claimed concentration of a hydrocarbon blowing agent by using emulsification process. It's not there. In fact, there's nothing in there on Vanderwood that suggests you can even emulsify pentane with any polyester polyol, let alone to the degree recited by the claim limitations here. Is that distinction addressed in the Hickey Declaration? Let me take a quick look here. The Hickey Declaration addresses the fact that there are unexpected benefits and unpredictability when you mix pentane in view of Vanderwood with a magnus type polyol. And so the Hickey Declaration at paragraph 17, for example, goes into detail as to why a person of skill in the art would find that it's unexpected and surprising that one could compatibilize such a high degree of hydrocarbons in the polyester polyol of magnus. Counsel, let me ask a question. Getting above the chemistry for a minute. Yes. Tell me why at the end of the day this is not a factual dispute between your client and the examiner, and the examiner didn't agree with your client's view of the facts. Why under a substantial evidence standard is there no reasonable basis to affirm the Yes, Your Honor. First let me take a step higher than that and say there is legal error in the analysis that the board engaged in. The first legal error was failure to consider the references and the claims as a whole. Considering just isolating pentane from Vanderwood, there is no teaching suggestion, motivation, or any reason to believe that you'd have a reasonable expectation of success when you consider Vanderwood as a whole to combine pentane with the polyol of magnus to somehow get to the ratios of the claimed invention. So the first error is a failure to consider the references and the claims as a whole. Secondly, there is further legal... But you agree that in magnus you're in the ranges of the claimed invention. You're just saying that once you put the pentane in, you wouldn't have anticipated staying in those ranges. No, I don't agree that you would ever get to the range by taking pentane and combining it with the magnus polyol from a point of view of a reasonable expectation of success. And that's the Hickey Declaration. The Hickey Declaration provided substantial and undisputed evidence that one would not expect to get to the claimed ratios, the hydrocarbon, hydrophobic ratios, by combining the pentane from Vanderwood with the polyol of magnus. And that's undisputed. When you take a look at the references as a whole, the evidence is to the effect and undisputed that you would not be able to expect to combine those pentane from Vanderwood with the magnus polyol to achieve the claimed ratios. My concern, counsel, is if this were the context of a motion for summary judgment, I'd say you've raised a fact question. But it's not. The context is substantial evidence after a factual determination. And you have to show me that there's no reasonable basis the examiner could have reached the conclusion they did. That's what I'm interested in. Where is the lack of any reasonable basis? All right. Well, let me comment on it. Beyond the error I just commented on, which is a legal error, there's another legal error before you can get to the threshold substantial evidence test. And that is what we have here is an unsupported argument of obviousness to try. And as you know, under KSR, obvious to try can only be acceptable, permissible, and in very limited circumstances where there are a finite number of identified and predictable solutions. And here the board's decision fails on all three counts. There isn't a finite number of choices. They didn't identify what those choices were in the realm of all of the enormous number of possibilities. But perhaps most importantly, the choices are not predictable solutions. Mr. Hickey said that. Mr. Hickey's declaration. That's what I'm struggling with. All right. I mean, I understand that the board has certain burdens here. But Mr. Hickey's declaration says you wouldn't have expected based on Vanderwood to use the pentane and magnets and then end up with the right proportions, the optimization. All right. But he never says, and one of skill in the art would never think that you could do that. Right? He doesn't come right out and say that. I think a fair reading of the Hickey declaration is there would be no reasonable expectation of success in combining and using the teachings of the references as a whole that one would have derived at the claimed hydrophobic and other ratios of the claims. And it's paragraph 17 that you're relying on? I believe that's the one important aspect of paragraph 17. In part, it's a quote. It says, it is surprising to find that much lower levels of these, referring to hydrophobic materials, in combination with surfactants are effective in compatibilizing the high percentages of hydrocarbons. He's saying that it's surprising, the art is unpredictable, and therefore there are no result effective variables. Therefore, there is not a finite number of identified and predictable solutions. So, again, there's a legal question that overlies the substantial evidence issue. You don't even get to the substantial evidence issue because of the legal error in conducting what here is an unsupported obviousness to try argument by the PTAS. How should we take into consideration the interested nature of the Hickey Declaration? How should we weigh that as opposed to a disinterested declaration? Yeah, I think you weigh that as the PTO suggests. It should be given some weighting. You should consider that, although I don't think that that will drive a different outcome or different analysis at the end of the day. You're not going to discount it to zero. There's no reason to discredit Mr. Hickey's testimony under oath by declaration, and the PTAS has not shown any reason to do so. So I think it's worthy of some consideration, but I don't think it's material in the analysis at the end. You acknowledge it's not as strong if it were from a disinterested source? Yes. Yeah, we wouldn't dispute that. Now, let me just echo a little bit further the point on obviousness to try. And I take your honors to the in-right psychobenzaprine hydrochloride case 676F3rd at 1070, 1071, 72, and 73, where this court said where the prior art at best gives only a general guidance as to the particular form of the claimed invention or how to achieve it, or merely if it's a theory is impermissible. And that's what we have here. We have a generalized isolated teaching that might stir up some interest to experiment with no expectation that one would arrive at these particular claimed ratios, which are associated with a particular end product. And there also are an enormous number of choices of what hydrophobic material, acid-based material, hydroxylated material, surfactants, amounts of water. And just to comment on the amount of water, there's no teaching that the PTO points to as to the claimed amount of water. They just say, oh, there's a wide range in magnus. And if you look at magnus at column 13, line 58, the range is 0 to 20 weight percent. That's not teaching the specific water limitation of the claim. And that point is just to emphasize that what we have here is a case of obviousness to experiment. Whether it would be obvious to experiment, and again, you need a finite number of identified predictable solutions. And the evidence in this case is that you have none. You have none of those three requirements satisfied. And certainly, you don't have predictable solutions. And for that reason, there's no result effective variables. The optimization test is unsupported. And one last comment. Yes. We'll restore your rebuttal time. Very good. Thank you. Thank you, Your Honor. We'll give the government three more minutes if it's necessary. Good morning. Good morning. May it please the Court. I think this case really boils down to the reasonable expectation of success. And that is a question of fact to which we're entitled to deference on. So I'd like to just go through what the basis is to show that there was a reasonable expectation of success. Vanderwooden teaches that you could substitute pentane for CFC in a polyester polyol. Vanderwooden also teaches that solubility depends on polarity. Magnus teaches that if you take a non-ionic surfactant and you add it to the hydrophobic component, you get surprisingly compatibilizing a blowing agent to CFC blowing agent, but it shows a surprising compatibilization. Magnus also teaches the starting point for the concentration of the blowing agent. Magnus specifically, in one of his examples, teaches 33 percent of freon. And finally, Hickey simply substituted an amount of a different blowing agent into the The key point here, though, is whether or not you can get to the optimization level using pentane. The government seems to concede that emulsification is a key issue, right? Emulsification is an alternative that the boards look to because there's also a teaching in Vanderwooden that you can emulsify, but it's not our only way of getting there. So actually, a simple substitution would get you there because if you look at Magnus, and I think it's example 16, it's example 16 in column 22, that has 33 percent freon. So if you just put in 33 percent of pentane into that, you would fall within Hickey's  But even if you didn't do a simple substitution, Vanderwooden teaches you that you can change hydrophobicity, you can change polarity, and that will change volubility. And Magnus teaches you that hydrophobicity isn't the only thing. A non-ionic surfactant, in addition to hydrophobicity, can compatibilize, surprisingly. Do you see that there's any kind of distinction between a polyester and a polyether? Well, Vanderwooden tested polyester-polyether blends, and he did find differences between them to some extent. Right, but in Vanderwooden, in order to deal with what he was talking about for purposes of emulsification, he required the presence of a dimmer acid, right? So Vanderwooden is only this dimer acid. So it is a different system than the Magnus system. But I think if you look at his emulsification teaching, which is at 289, the first two sentences under compatibility in column one, he says pentane, however, is barely soluble in these formulations and must be emulsified in the preblend. I actually think it's unclear whether he's just talking about the polyether-polyol or the ones that also have polyesters admixed in. But emulsification is just vigorous shaking, and I don't think there's any reason to believe that vigorous shaking wouldn't work with a polyester as well as a polyether. So, finally, we don't think that this is an obviousness to try a case. To the contrary, we think it's a simple substitution. If you take every element of Magnus and just substitute in pentane for a chlorofluorocarbon, which the market demand was that you needed to do so according to the Montreal Protocol, you can get the claimed invention. Not that you necessarily needed to substitute pentane, but you needed to substitute something. Right, well, hydrocarbon. Right, so hydrocarbon. But I guess I'm still struggling with how we get within the ranges claimed. So, like I said, I think you could do a simple substitution, because Magnus tells you to use 33% freon, so if you use 33% pentane, that would fall within. The claim calls for 14% to 35%, I believe. Now, but this is assuming that we now accept your attack on Hickey's methodology for his calculations, right? Right, so what Hickey does is he takes this one example and he figures out that it has 68% of a hydrophobic component. And then he seems to say that because the steimer acid-based polyester polyol had 68% of a hydrophobic component, you would necessarily need 68% in the Magnus system. But that doesn't take into account that Magnus also uses a non-ionic surfactant. And Magnus says over and over, actually that seems to be what Magnus' invention is, that you get surprising results for compatibilization when you add a non-ionic surfactant to a hydrophobic component. So we don't believe that Hickey took that into account in his declaration, and that you wouldn't necessarily take the same amount from a steimer acid, which actually he's excluded from his claim, from a steimer acid polyester polyol into the Magnus. Why wouldn't you start with Magnus' starting point? Did you attack his methodology, though, before this proceeding? Well, the board basically just says that it finds it not persuasive because it's based on, and this is A7 to A8. So it says, it talks about the Hickey declaration, and that Vanderwouden's polyol has an amount of hydrophobic material outside the claimed hydrophobic amount. But the board finds that not persuasive because we're relying on Magnus as our primary reference, not Vanderwouden. What Hickey does is he starts with Vanderwouden, and then he makes all his assumptions from Vanderwouden, and then he just says, well, this would apply to Magnus, too. But he gives no reasoning or analysis. The office's rejection starts with Magnus, because that teaches all the elements of the claim, and then just substitutes in the pentane. If the court has no further questions, I'll yield my time and ask that you refer the board to decision. All right. Thank you. I'll try to make a couple of quick points. First, I think there's a bit of a misstatement. Mr. Hickey looked at all three examples of the polyol from the Vanderwouden reference. Second. What's your response, though, because this did seem to be like we had two ships passing in the night a little bit. You start with Vanderwouden. The government starts with Magnus. Aren't we supposed to look at the closest reference and start there? I mean, the closest reference really is Magnus. Why would you admit that only one claim limitation is missing? Let me say it this way. Mr. Hickey looked at Magnus, and he looked at combining pentane with Magnus. And if you read the declaration, he says, reading the prior art as a whole, you would expect to need over 50 percent of hydrophobic material using the Magnus polyol. So he, therefore, concludes pretty readily that you're outside of the claims. The reasonable expectation is I can't satisfy the claimed ratios using the Magnus polyol with pentane. And that's why there's no reasonable expectation of success. And that's using, again, the Magnus polyol. And if I could back up for a second, I think the board's whole notion of what success should be measured against environmental reasons is legally erroneous. You've got to look at success in terms of what's claimed. The claims are directed to a polyol for making rigid foam in the desired range, and the spec tells you you have phase stability problems. That's the context of success. I think I understood the government to simply say that the environmental reason is the motivation. But then you have to have a reasonable expectation of success for the workability of the product, given its intended uses. I think I can accept that. And let me highlight what I heard counsel say. You could try. I think I heard it more than once. You could try to use the 33 percent number from the Magnus polyol. You could try this. You could try that. You could try a lot of things. But as we briefed, there are an enormous number of things you could try, an enormous number of decisions to make. And to say you could try when there is not a finite number of identified predictable solutions, you by definition have presented an unsupported obviousness to try argument. This case is not sufficient under 103 to say I could try using a certain weight percent number and satisfy the claim. The issue is whether there is an adequate teaching looking at the references as a whole to arrive at the claimed ratios. The evidence is not there. Mr. Hickey's declaration is valid. It's unrebutted. It was simply ignored. And if you read it, the brief, the PTO's position is that we're entitled to ignore the Hickey declaration. And then they still try to attack it with their first-tier argument, and if we can ignore it, I guess. Pardon me? It's not ignored. Well, their first-level argument is I don't need to consider the Hickey declaration because I can legitimately take pen paint from Vanderwood. But they do go on to then argue against it. No question there, Your Honor. So we would submit that the patent office has failed to establish a showing of reasonable expectation of success. The applicant is entitled to a patent, and we respectfully request a reversal of the board's decision. Thank you. Thank you. The case will be submitted.